UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| MARIA NEGRON, | * | |
| | * | Civil Action No. 17-cv-11878-IT |
| Plaintiff, | * | |
| v. | * | |
| NANCY A. BERRYHILL, | * | |
| Defendant. | * | |

MEMORANDUM & ORDER
March 31, 2019

TALWANI, D.J.

I.    Background

Plaintiff, Maria Negron, proceeding *pro se*, seeks reversal of the decision by the Commissioner of the Social Security Administration denying her Social Security disability benefits for the years 2014 to 2017. Compl. [#1]; Mot. Order Reversing Decision Comm'r [#21]. Defendant, Acting Commissioner Nancy A. Berryhill, asks this court to affirm the decision. Mot. Order Affirming Decision Comm'r [#26]. Because Plaintiff previously sought, and was denied, review by the Appeals Council, the decision of the Administrative Law Judge ("ALJ") is the final decision of the Commissioner. See Notice of Appeals Council Action, Social Security Administration Record of Proceedings ("Rec.") 2 [#15-2].

II.    Standard

Upon a motion for review of a final decision of the Commissioner, a district court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A court may not disturb the Commissioner's findings where they are supported by substantial evidence and

the Commissioner has applied the correct legal standard. <u>Ward v. Comm'r of Soc. Sec.</u>, 211 F.3d 652, 655 (1st Cir. 2000). Evidence is substantial where "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support a conclusion." <u>Rodriguez v. Sec'y of Health & Human Servs</u>., 647 F.2d 218, 222 (1st Cir. 1981). A district court may review the ALJ decision "solely on the evidence presented to the ALJ," <u>Mills v. Apfel</u>, 244 F.3d 1, 5 (1st Cir. 2001). The court may also remand the case for further proceedings and order that the evidence be added to the record upon a finding that new evidence is material and there is good cause for failure to incorporate such evidence into the record previously. 42 U.S.C. § 405(g). However, remand is only appropriate when the court determines that "further evidence is necessary to develop the facts of the case fully, that such evidence is not cumulative, and that consideration of it is essential to a fair hearing." <u>Evangelista v. Sec'y of Health & Human Servs.</u>, 826 F.2d 136, 139 (1st Cir. 1987).

### III. <u>Procedural History</u>

Ms. Negron filed a Title II application for a period of disability and disability insurance benefits on June 16, 2014. <u>See</u> ALJ Hearing Decision, Rec. 9 [#15-2]. The claim was denied initially in August 2014, and again upon reconsideration in November 2014. <u>Id</u>. Ms. Negron requested a hearing, which was held before an ALJ on December 1, 2015. <u>Id</u>. The ALJ issued his decision on January 28, 2016. <u>Id.</u> at 21 [#15-2]. Ms. Negron subsequently sought review of the ALJ's decision from the Appeals Council. <u>See</u> Notice of Appeals Council Action, Rec. 1 [#15-2]. The Appeals Council denied her request for review on August 15, 2017. <u>Id</u>. at 3-5. Subsequently, Ms. Negron filed a complaint in this court on October 12, 2017. Compl. [#1].

IV.     Analysis

In her Motion for Order Reversing Decision of Commissioner [#21-1], Plaintiff requests that the court reconsider her medical evidence, arguing that "[u]nder the SSA guidelines I have the following musculoskeletal problems, neurological disorders, and mental disorders," which makes it difficult to function "the way I was able to do in the [past]." Id. at 2. She also states that she incorrectly filled out her Social Security questionnaire, and that questionnaires filled out by her mental health provider and primary physician were not provided prior to Plaintiff's hearing before the ALJ. Id. at 1.

Ms. Negron further argues, in her Response to Defendant's Motion for Order Affirming Decision of Commissioner [#30], that the ALJ's decision is not supported by substantial evidence, and the ALJ wrongfully found that she did not have an impairment that meets 20 C.F.R. Part 404, Subpart P, Appx. 1. She states that she has ongoing symptoms of chronic neck, back, arm, and joint pain, along with tingling, numbness, and weakness of limbs, as well as depression, poor concentration, and panic attacks, and that she suffers from chronic fatigue and fibromyalgia. Ms. Negron argues in her Response that her impairments are listed in the regulations (in sections relating to the musculoskeletal system, neurological disorders, mental disorders, and immune system disorders). Ms. Negron also asserts that the ALJ relied upon a vocational expert who failed to consider all physical requirements needed to perform certain jobs. Resp. to Def. Mot. Order Affirming Decision Comm'r 2 [#30]. In support, Ms. Negron submitted to the court various exhibits. See generally, Exs. [#30-1].

Because Ms. Negron requests review of the ALJ's decision and offers new evidence, the court will treat her Motion for Order Reversing Decision of Commissioner as both a motion for

3

review of the Commissioner's decision and a motion to remand for consideration of new evidence.

A. *Motion for Review of a Final Decision of the Commissioner*

In analyzing Ms. Negron's motion first as a motion for review of a final decision, the court considers only the evidence that is in the record. "Judicial review of a Social Security claim is limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).

To determine whether an individual is disabled, the Administrative Law Judge ("ALJ") goes through a five-step sequential evaluation process. Here, at step one, the ALJ found that Ms. Negron had not engaged in substantial gainful activity since June 18, 2014, the alleged onset date. See ALJ Hearing Decision, Rec. 11 [#15-2]. At step two, the ALJ considered whether Ms. Negron has a "'medically determinable impairment' that is 'severe' or a combination of impairments that is 'severe.'" Id. at 10. The ALJ found that Ms. Negron suffered from several severe mental and physical impairments, including bilateral symptoms of carpal tunnel syndrome, "possible" radiculopathy, dysthymic disorder, panic disorder, attention deficit-hyperactivity disorder ("ADHD"), and cannabis abuse. Id. at 11. However, the ALJ concluded that the record did not support a finding of a medically determinable impairment as to the "alleged fibromyalgia, left elbow nerve entrapment, or obsessive-compulsive disorder." Id. at 12.

The court construes Ms. Negron's contentions regarding her abilities and symptoms in her Response to Defendant's Motion for Order Affirming Decision of Commissioner [#30] and her Motion for Order Reversing Decision of Commissioner [#21] as attempting to address this step of the ALJ's analysis. As discussed above, the ALJ did find that Ms. Negron had several

4

severe impairments, based on the evidence in the record and the limitations these impairments impose on Ms. Negron's abilities to perform basic work. See ALJ Hearing Decision, Rec. 11 [#15-2]. However, the ALJ did not find that Ms. Negron had all the impairments she alleged. With respect to the impairments that the ALJ rejected – three surgical procedures, fibromyalgia, left elbow nerve entrapment, and obsessive-compulsive disorder – the ALJ found that the record "does not contain sufficient objective medical evidence to confirm the presence of medically determinable impairments consistent with the claimant's allegations." See id. at 12 [#15-2]. With respect to fibromyalgia, the ALJ also found that Ms. Negron's case file did not contain the additional medical documentation required by Social Security Ruling 12-2p in order to make a finding of a medically determinable impairment. Id. Without minimizing Ms. Negron's own experience of pain, the court agrees that "plaintiff's affirmation that she experienced pain does not undermine the ALJ's step-two determination because the ALJ acknowledged the plaintiff's pain disorder to be severe, and the plaintiff has not explained how her severe pain disorder resulted in greater limitations than those identified by the ALJ [ . . . ]." Mem. in Support of Def. Mot. Order Affirming Decision Comm'r 2 [#27].

Because the ALJ found that Ms. Negron has a severe impairment, he considered, at step three, whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1. Here, the ALJ concluded that the severity of Ms. Negron's symptoms did not meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1. See ALJ Hearing Decision 12 [#15-2]. Ms. Negron asserts that "[t]he ALJ's decision states that I did not have an impairment or combination of impairments that met one of the listed impairments . . . I

5

don't understand why I don't meet the impairments, when my impairments are listed" in the regulations. See Resp. to Def. Mot. Order Affirming Decision Comm'r 2 [#30].

The issue at step three is whether that impairment is of such a severity that no further residual function capacity determination need be made. While Ms. Negron's Motion argues her impairments are listed, she does not provide "substantive argument indicating how" she meets the severity of impairments as listed in Appendix 1. See Torres v. Sec'y of Health & Human Servs., 870 F.2d 742, 745 (1st Cir. 1989). After carefully considering her mental and physical impairments, the ALJ concluded that Ms. Negron's symptoms, taken together or individually, are not of a severity listed by the criteria. See ALJ Hearing Decision 12 [#15-2]. For instance, the ALJ examined the criteria of section 1.02 regarding dysfunction of a major joint and found that no "treating or examining physician has proffered findings that are equivalent in severity to the criteria of these or any other listed impairments." Id. at 12. Likewise, the ALJ considered Ms. Negron's mental impairments and their impact on Ms. Negron's daily living. Upon considering various factors of Ms. Negron's daily living – including social functioning, concentration persistence or pace, periods of compensation – and the criteria of the regulations, the ALJ found that, although Ms. Negron suffers from minor or moderate limitations in some areas of functioning, her impairments do not result in the level of decompensation or limitations required to satisfy the regulatory criteria of the listings. Id. at 12-14 (considering Ms. Negron's symptoms under "paragraph B" and "paragraph C" criteria). While Ms. Negron's Response attached corroborating medical evidence of her mental and physical impairments, discussed *infra*, she does not sufficiently explain why the ALJ's finding as to the severity of her impairments, based on the ALJ's consideration of objective medical evidence and Ms. Negron's reported range of

daily activities, is wrong.[1] Accordingly, her motion provides no basis for the court to find that the Commissioner's findings are not supported by substantial evidence and that the Commissioner has not applied the correct legal standard. See Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).

If the claimant's impairment or combination of impairments is not of a severity to meet or medically equal the criteria of a listing and meets the duration requirement, the ALJ proceeds to analyze, under step four, the claimant's residual functional capacity to perform the requirements of her past work, and under step five, the claimant's ability to do any other work given the claimant's residual functional capacity, age, education, and work experience.

Accordingly, the ALJ analyzed Ms. Negron's abilities, symptoms, education, and age under steps four and five and determined that Ms. Negron cannot perform her past relevant work. In his analysis under step four, the ALJ first considered whether Ms. Negron has an underlying medically determinable physical or mental impairment that can be showed by medically acceptable clinical and laboratory diagnostic techniques to produce her pain or symptoms, and then considered the "intensity, persistence, and limiting effects" of Ms. Negron's symptoms to determine the extent to which they limit her functioning. See ALJ Hearing Decision, Rec. 14 [#15-2]. The hearing decision reflects appropriate consideration of the medical records and reports, as well as Ms. Negron's testimony regarding her symptoms and activities of daily living.

---

[1] The court notes one discrepancy between the ALJ's findings and the record. In discussing Ms. Negron's mental impairments, the ALJ commented that the record reflects no "evidence of psychiatric hospitalization, episodes of decompensation, or suicidal ideation." ALJ Hearing Decision, Rec. 18 [#15-2]. However, a report by Dr. Hirsch notes that Ms. Negron suffers from "depression with passive suicidal ideation." Rec. 456-463 [#15-8]. Upon considering the record in totality, and with affording due deference to the ALJ's credibility findings, the court still finds that the ALJ's conclusions are supported by substantial evidence and the correct application of law.

Id. at 16-18. The ALJ also explained the weight given to each piece of evidence. Id. at 18-19. Ultimately, the ALJ found that Ms. Negron is unable to perform her past relevant work, and moved on to step five. See ALJ Hearing Decision, Rec. 19-20 [#15-2].

Upon determining Ms. Negron's residual functional capacity, the ALJ relied upon the testimony of a vocational expert to identify jobs Ms. Negron could perform, given her residual functional capacity, age, education, and work experience. Id. Ms. Negron argues that the ALJ relied upon a vocational expert who failed to consider all physical requirements needed to perform certain jobs. See Resp. to Def. Mot. Order Affirming Decision Comm'r 2 [#30]. She further disputes the vocational expert's views on the physical requirements needed to perform unskilled work such as lot attendants and custodial work. However, the positions cited by Ms. Negron are not the representative examples provided by the vocational expert. See ALJ Hearing Decision, Rec. 20 [#15-2] (identifying lobby attendant and credit checker as possible representative occupations). In fact, the ALJ specifically considered the fact that Ms. Negron did not have the ability to perform a "full range of light work," including many of the physical demands Ms. Negron argues in her motion that the vocational expert did not consider, in asking the vocational expert about positions that Ms. Negron could perform. Id. at 12.; Hearing Transcript, Rec. 48-51 [#15-2]. Accordingly, the ALJ asked the vocational expert for positions for an individual who can work at a "light exertion level with only occasional climbing, balancing, stooping, kneeling, crouching, or crawling" and who can only "occasionally reach overhead" or "grasp or twist with either hand." Id. at 49. The vocational expert identified several jobs including gate guard, TV sales rep, and lobby attendant, and further identified credit checker as a "sedentary" job option. Id. at 50. Ultimately, the ALJ found (1) that Ms. Negron could perform the requirements of representative activities such as lobby attendant and credit checker,

and (2) that those jobs exist in Massachusetts and the national economy. See ALJ Hearing Decision, Rec. 20 [#15-2].

Because Plaintiff does not address the ALJ's findings or bear her burden of providing evidence to support her contentions regarding any incorrect conclusions, Plaintiff's challenge to the ALJ's vocational conclusions is insufficient to warrant relief in her favor.

*B. Remand*

Although Ms. Negron has not argued that the case should be remanded, in light of the submission of 28 additional pages of medical records (including psychological evaluations from 2000 and 2002, medical examinations from 2014, consultative examinations from 2015, and progress reports from 2016) with her Response, the court turns to whether remand is warranted.[2]

As discussed above, the court may remand the case for further proceedings and order that the evidence be added to the record if new evidence is material and there is good cause for failure to incorporate such evidence. 42 U.S.C. § 405(g). Even when evidence is "new," evidence is only "material if the ALJ's decision 'might reasonably have been different' were it considered." Conner v. Barnhart, 443 F. Supp. 2d 131, 134 (D. Mass. 2006) (quoting Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 140 (1st Cir.1987)); see also Garay v. Berryhill, No. 3:16-CV-30122-KAR, 2017 WL 4238861, at *13 (D. Mass. Sept. 25, 2017)

---

[2] Almost a month after filing her response, Ms. Negron filed an additional Mental Residual Functional Capacity Questionnaire that she states "was completed on 10/01/15 by my mental health provider. I didn't hear this information mentioned at my ALJ hearing." Letter to the Court [#31]. The court infers that this may be one of the questionnaires that Ms. Negron's Motion for Order Reversing Decision of Commissioner [#21] argues was not provided to the ALJ. However, although accompanied by a medical release authorizing All Care Wellness, a healthcare provider in Stoughton, Massachusetts, to release information, the Questionaire itself does not state the name of the practice or medical office; the signature on the document is indecipherable; the document is undated; and portions of the Questionaire remain blank. Accordingly, this late-submitted information is not sufficiently authenticated to warrant further consideration.

(stating that "[e]ven when evidence is 'new' for purposes of § 405(g), remand is warranted only when such evidence, had it been before the ALJ, might have changed the outcome of the ALJ's decision."). Evidence must be material to the relevant time period. See, e.g., Johnson ex rel. M.C.J. v. Astrue, No. CIV.A. 11-11243-JLT, 2012 WL 1605984, at *10 (D. Mass. Apr. 12, 2012) (finding that evidence is not material because it does not pertain to the relevant time period before the ALJ and because new records "suggest an exacerbation of [claimant's] condition" rather than retrospective assessments.); Walker-Smith on behalf of A.D.W. v. Colvin, No. CV 16-10394-FDS, 2017 WL 1380406, at *9 (D. Mass. Apr. 17, 2017) (evidence was not material because records relate to visits occurring two and three months after the issuance of the ALJ opinion); Plato v. Colvin, No. CIV.A. 1:12-CV-319, 2013 WL 5348603, at *2 (D. Me. Sept. 24, 2013) (evidence must be "material to the issue of the claimant's condition during the time period for which benefits were denied as opposed to the development of a new disability.") (internal quotation marks omitted).

Ms. Negron's evidence submitted with her Response comprises several additional exhibits, identified here as nine submissions. This evidence includes: (1) psychological evaluation from the Family Testing Center of Southeastern Mass. Inc., dated 8/30/2000, 1-6 [#30-1] ("submission 1"); (2) UMMC Disability Evaluation Services, examination by Mark Sokol, Ed. D., dated 9/10/2002, 7-9 [#30-1] ("submission 2"); (3) Fall River, Daily Office Note, Re-Examination, note transcribed by Allison Hurley, D.C., dated 7/18/2014, 10-11 [#30-1] ("submission 3"); (4) UMMC Disability Evaluation Services, examination by Richard Ober, PhD., dated 12/21/2015, 12-17 [#30-1] ("submission 4"); (5) progress notes by provider Christine Boyer, P.A., dated 9/21/2015 to 9/24/2015, 18-20 [#30-1][3] ("submission 5"); (6)

---

[3] The administrative record includes a letter written by Christine Boyer on Ms. Negron's behalf,

progress notes by provider Christine Boyer, P.A., dated 10/26/2015, 21-22 [#30-1] ("submission 6"); (7) progress notes by provider Christine Boyer, P.A., dated 1/11/2016, 23-24 [#30-1] ("submission 7"); (8) Southcoast Health, progress notes by provider Suzelle S. Luc, M.D., dated 8/23/2016, 25-27 [#30-1] ("submission 8"); and (9) Southcoast Health, progress notes by provider Suzelle S. Luc, M.D., dated 9/14/2016, 28 [#30-1] ("submission 9").

  *a. Good Cause*

  The court does not find that Ms. Negron has offered good cause for failure to incorporate into the record any evidence that pre-dates the ALJ's January 25, 2016, decision. See, e.g., Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 139 (1st Cir. 1987) ("The mere existence of evidence in addition to that submitted before the hearing examiner will not constitute sufficient cause for remand."). Courts have found good cause when there is "no attempt to subvert the administrative process" and the fault does not lie on the petitioner. Brooks v. Colvin, 217 F. Supp. 3d 455, 462 (D. Mass. 2016) (internal quotation marks omitted) (finding good cause where medical provider failed to provide the ALJ with a complete set of medical records). Because Ms. Negron has "failed to provide any explanation for why [she] failed to introduce this evidence to the ALJ either prior to the hearing or prior to the ALJ's decision," Conner v. Barnhart, 443 F. Supp. 2d 131, 134 (D. Mass. 2006), the court does not find that submissions 1 through 6 provide grounds to remand the case.

  *b. New and Material*

  Even if Ms. Negron provided good cause for failure to introduce the evidence, the court does not consider any of the evidence to be new or material. Submissions 1 and 2, evaluations which significantly pre-date the disability onset date of June 18, 2014, do not offer new or

---

but not the precise records included here. See Rec. 663 [#15-11].

material information. Ms. Negron's other submissions are likewise not new or material, for reasons discussed below.

Submission 4 is a disability report, dated December 21, 2015, by Dr. Ober. Dr. Ober's assessment notes that Ms. Negron has neck and back pain, resulting in high pain without medication. Ober Report 12 [#30-1]. He also noted that she has difficulty sleeping and suffers from panic attacks, id. at 13, and suffers from post-traumatic stress disorder, panic disorder, and moderate and recurrent major depressive disorder. Id. at 16. In terms of Ms. Negron's functional capabilities, Dr. Ober wrote that she has difficulty shopping because it takes her a long time to make decisions; that Ms. Negron can drive; manage minor tasks at home; sit in a comfortable chair for 15-20 minutes and stand in a restricted area for 15-20 minutes; and lift and carry 10 pounds. Id. at 13-15. Dr. Ober's conclusions are very similar to those of the ALJ. As discussed *supra*, the ALJ found that Ms. Negron had minor restrictions because "she is able to attend to personal care tasks, prepare complete meals, do laundry, clean, drive an automobile, shop for groceries," as well as other tasks. See ALJ Hearing Decision, Rec. 13 [#15-2]. While Dr. Ober's report differs with respect to some restrictions - for example, his finding that Ms. Negron has difficulty shopping because it takes her a long time to make decisions, or his finding that Ms. Negron can only sit in a chair for 15-20 minutes – his findings do not materially differ from the ALJ's conclusions regarding Ms. Negron's functional capabilities. Although Dr. Ober did not characterize Ms. Negron as having mild restrictions, the fact that he draws a different conclusion than the hearing officer, based on substantially the same facts, does not render the evidence "new." See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 140 (1st Cir. 1987); see also Moore v. Astrue, No. 11-CV-11936-DJC, 2013 WL 812486, at *14 (D. Mass. Mar. 2, 2013) (plaintiff's evidence regarding "post-ALJ decision treatment and hospitalization are

cumulative of the evidence regarding [plaintiff's] diagnosis and treatment that was already in the record."). Furthermore, the ALJ's decision reflects his views regarding Ms. Negron's credibility and ability to self-report regarding her limitations. See ALJ Hearing Decision, Rec. 14 [#15-2] ("[w]henever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on . . . the entire case record."); id. at 18 ("[t]o the extent the claimant testified to limitations greater than I have found, I find that testimony not credible [for reasons that follow]"); id. at 19 ("I find the claimant's reports of limitations in her daily activities are outweighed by the other factors discussed throughout this discussion."). To the extent that Dr. Ober's report relies on the same reporting of limitations or pain by Ms. Negron, it reflects facts or assertions by Ms. Negron about her abilities of which the ALJ was already aware. Credibility determinations by the ALJ who "observed the claimant" are "entitled to deference, especially when supported by specific findings." Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987). Because this evidence is neither new nor material, the court does not find cause to grant the motion to remand on this basis.

      Plaintiff's other submissions include a daily office note by Allison Hurley, D.C. (Doctor of Chiropractic) [#30-1] at 10-11 (submission 3), and progress reports by Christine Boyer, P.A. (Physician's Assistant), from medical appointments, from 9/21/2015 to 9/24/2015 (submissions 5) [#30-1] at 18-20; 10/26/2015 [#30-1] at 21-22 (submission 6); and 1/11/2016 [#30-1] at 23-24 (submission 7). The court does not find submissions 3 through 7 to be "new and material."[4]

---

[4] Moreover, chiropractors and PAs are not a treating source whose opinion is presumptively entitled to controlling weight. See 20 C.F.R. § 416.927(a)(2) (2017) (a "treating source" for the purpose of evaluating opinion evidence for claims submitted before March 27, 2017 must be an "acceptable medical source"); 20 C.F.R. § 416.913(d) (2013) (defining physician's assistant and chiropractors as "other sources" rather than "acceptable medical sources"). ALJs may still

13

Substantively, the notes reference conditions known to the ALJ, and largely reflect information already in the record. The court does not find that the ALJ's decision would "reasonably have been different" had this evidence been available. Evangelista, 826 F.2d 136.

Submissions 8 and 9 are notes from Ms. Negron's appointments with Dr. Luc, of the Rheumatology Department of Southcoast Health. See Submissions 8 & 9, 25-28 [#30-1]. Submission 8 indicates a possible diagnosis of lupus or a different autoimmune disease, id. at 25, mentioning a recommendation for additional testing, and Submission 9 appears to be notes from an appointment "to establish care" for "joint pain." Both reports suggest the possibility of either a new diagnosis or pre-existing disease affected by Ms. Negron's pregnancy, but neither offers a conclusive diagnosis. See id. at 25 ("Certain autoimmune diseases, such as RA, can go into remission with pregnancy. However some autoimmune diseases [sic] such as lupus can manifest for the first time"); ("joint pain in the clinical context of being 5 weeks pregnant"); id. at 28 ("assess for possible inflammatory arthritis"). To the extent that Ms. Negron seeks to assert a misdiagnosis of her past symptoms, the materiality standard demands more than notes from Ms. Negron's physician ordering additional testing. See Mahamed v. Colvin, No. CV 14-13258-LTS, 2015 WL 7009070, at *9 (D. Mass. Nov. 12, 2015) (remanding a case where new reports from a treating physician clearly show "new diagnoses, new symptoms, and an increase in severity of

---

consider evidence from "other sources" but are not required to give such sources "controlling weight." See 20 C.F.R. § 416.927(c) (2017) (explaining how the Social Security Administration weighs medical opinions); see also Taylor v. Astrue, 899 F. Supp. 2d 83, 87-88 (D. Mass. 2012). While the ALJ may still give evidentiary weight to opinions from such sources, upon an explanation of why that weight was given, the court finds it relevant that the ALJ gave "less weight" to the opinion of Dan Nguyen, P.A., in part because he "is not considered an acceptable medical source within the meaning of the regulations." See ALJ Hearing Decision, Rec. 18 [#15-2]; see, e.g., Moore v. Astrue, No. 11-CV-11936-DJC, 2013 WL 812486, at *14 (D. Mass. Mar. 2, 2013) (in deciding whether new evidence was material, the court considered the ALJ's rationale for assigning evidentiary weight to a similar or identical source in the initial hearing).

the existing ones."). While these reports, or tests resulting from these medical visits, may be relevant to any *new* claim Ms. Negron chooses to pursue, the evidence as it stands is not material to Ms. Negron's existing claim.

Submissions 8 and 9 are also not material because they post-date the ALJ's January 25, 2016, decision, by a period of over eight months. See, e.g., Johnson, 2012 WL 1605984, at *10; Walker-Smith on behalf of A.D.W., 2017 WL 1380406, at *9; Plato, 2013 WL 5348603, at *2. Because this evidence is substantially beyond the relevant time period, the court finds that it is not material.

Finally, to the extent that Ms. Negron's Motion challenges that ALJ's finding regarding her fibromyalgia ("FM"), the ALJ found that Social Security Ruling 12-2p identifies specific medical documentation necessary for a finding of a medically determinable impairment of fibromyalgia. See ALJ Hearing Decision, Rec. 13 [#15-2]; see Soc. Sec. Ruling, SSR 12-2P; Titles II & XVI: Evaluation of Fibromyalgia, 2012 WL 3104869 (S.S.A. July 25, 2012) (identifying relevant evidence as including "objective medical evidence," such as "longitudinal records reflecting ongoing medical evaluation and treatment"; evidence for the 12-month period before the date of application "unless we have reason to believe that we need evidence from an earlier period, or unless the alleged onset of disability is less than 12 months before the date of application"; evidence from other acceptable medical sources; and evidence from relevant non-medical sources to assess credibility). The ALJ found that Ms. Negron's file did not provide this evidence, and this court finds that Ms. Negron's supplemental submissions do not address these shortcomings such that the court may remand the case. See also Dias v. Colvin, No. 15-CV-13003-ADB, 2018 WL 988053, at *9 (D. Mass. Feb. 20, 2018) (finding that a fibromyalgia

15

diagnosis by a doctor, alone, does not satisfy a claimant's burden of proving fibromyalgia as a medically determinable impairment).

Accordingly, Plaintiff's Motion for Order Reversing Decision of Commissioner [#21] must be denied, Defendant's Motion for Order Affirming Decision of Commissioner [#26] granted, and this case dismissed.

IT IS SO ORDERED.

Date: March 31, 2019 /s/ Indira Talwani
United States District Judge